**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MIGDALIA NAZARIO, | Civil Action No. 09-4287 (SDW) |
| Plaintiff, | |
| v. | **OPINION** |
| MICHAEL ASTRUE, Commissioner of Social Security, | July 26, 2010 |
| Defendant. | |

**WIGENTON,** District Judge.

Before the Court is Plaintiff Migdalia Nazario's ("Nazario" or "Plaintiff") appeal of the Commissioner of Social Security's (the "Commissioner") final decision that Plaintiff is not disabled and therefore not eligible for disability insurance benefits under Title II, 42 U.S.C. § 421 *et. seq.*, or Title XVI, 42 U.S.C. §§ 1381-83, of the Social Security Act (the "Act"). The central issues are whether the Administrative Law Judge (the "ALJ") erred in determining Plaintiff had the residual functional capacity to perform her past relevant work and in assessing the impact of Plaintiff's non-exertional impairments without recourse to vocational evidence.

This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Venue is proper in this District under 28 U.S.C. § 1391(b). This appeal is decided without oral argument pursuant to Local Civil Rule 9.1(b). For the reasons discussed below, the Court VACATES and REMANDS the Commissioner's decision.

**FACTUAL AND PROCEDURAL BACKGROUND**

**i. Employment, Medical and Personal History**

Nazario is a 50 year old woman who was born in Puerto Rico and immigrated to the United States in 1965. (Tr. 32.) She graduated from high school in New York, and then attended Staten Island Community College, but left before she earned a degree. (Tr. 32-33.) Nazario has held eight jobs, the most recent of which was her employment as a customer service representative for a temporary staffing firm. (Tr. 119-20.) Nazario held this position from September 2004 until June 16, 2005 (Tr. 119), but she was terminated after suffering a fall that required hospitalization (Tr. 94.)

The medical record indicates that Nazario suffers from non-insulin dependent diabetes mellitus, moderate gastritis, an L5-S1 disc herniation, and a significant limitation in her cervical spine range of motion. (158(gastritis), 174(diabetes), Tr. 243(range of motion), 255(hernia).) Nazario also shows signs of strong disc cupping, indicating glaucoma. (Tr. 268.) Ultimately, Nazario claims she has a disability based on her herniated disc, diabetes, headaches, and blurred vision. (Tr. 94.)

Nazario was treated by Dr. Mandeep Othee, a rehabilitation and pain management specialist at Spinal & Head Trauma Associates, P.C., from October 2005 through September 2006. (Tr. 243-62.) During this time, Nazario complained of "neck pain with paresthesia, numbness, and tingling radiating down the arms." (Tr. 243.) In addition, "[s]he report[ed] low back pain with paresthesia, numbness, and tingling radiating down the legs." (Tr. 243.) An MRI performed on October 17, 2005, indicated that Nazario was suffering from a L5-S1 disc herniation. (Tr. 262.) Dr. Othee also determined that Nazario's range of motion in her lumbar and cervical spine was significantly restricted on all planes of motion. (Tr. 243.) Dr. Othee

2

treated Nazario's pain with physical therapy, lidocaine injections, painkillers, and steroid injections. (Tr. 243-62.) Dr. Othee did, however, inform Nazario that she was to return to work on December 19, 2005, with her only limitation being that she was not to lift any weight over ten pounds. (Tr. 254.)

Nazario presented to the emergency room at Trinitas Hospital on December 7, 2005, complaining of abdominal pain, nausea, and vomiting. (Tr. 174.) The treating physician, Dr. Jose Sabogal, noted that Nazario had suffered from diabetes for seventeen years, dyslipidemia for one year, and hemorrhoids. (Tr. 174.) Dr. Sabogal further reported that Nazario had a history of alcohol use, cigarette smoking, and of non-compliance with her prescribed medications. (Tr. 174.) Nazario underwent an esophagogastroduodenoscopy (EGD) procedure, which indicated that she suffered from a hiatus hernia and moderate gastritis. (Tr. 158.) In Dr. Sabogal's opinion, however, Nazario had no significant restrictions on her ability to do work related activities. (Tr. 212.)

Nazario again presented to the emergency room at Trinitas Hospital on December 29, 2005, at that time complaining of high blood sugar. (Tr. 182.) Nazario's urine glucose level was over 1000; she stated that she had not taken her diabetes medications because she was unable to afford them. (Tr. 182, 184.) She was administered intravenous glucose and discharged with a follow-up appointment at a clinic and orders to take her medications as prescribed. (Tr. 182.)

Dr. Manish Patel ("Dr. M. Patel"), a doctor at Trinitas Hospital, reported that he first evaluated Nazario on September 10, 2004, and that his most recent examination of her was on April 21, 2006. (Tr. 203.) Dr. M. Patel diagnosed Nazario with degenerative spinal joint disease, and noted that she had been treated with multiple sessions of physical therapy and NSAIDS, and had been referred to a neurosurgeon. (Tr. 205.) In Dr. M. Patel's opinion, Nazario should avoid

carrying weight, could not stand and/or walk for more than two hours per day, was limited in her ability to push or pull, and should not do any work involving bending of the back. (Tr. 205.)

On November 7, 2006, Nazario was examined by Dr. Rambhai Patel ("Dr. R. Patel") at the request of the Division of Disability Determination Services. (Tr. 263.) Dr. R. Patel noted that Nazario had herniated discs, suffered from pain in her neck, and pain in her lower back area which got worse if she walked for more than fifteen minutes, bent, or lifted more than fifteen pounds. (Tr. 263.) Dr. R. Patel further noted that Nazario had suffered from diabetes mellitus for twenty-three years and could walk without a cane for only one block. (Tr. 263.) Dr. R. Patel performed a physical examination of Nazario and diagnosed her with status post herniated discs, diabetes mellitus, and numbness in the upper lower extremities, possibly caused by diabetic neuritis. (Tr. 264.) Additionally, Dr. R. Patel commented that Nazario could "do both fine and gross movements with both hands," had a normal grip, and showed no signs of muscle injury. (Tr. 264.)

Nazario was seen by an ophthalmologist, Dr. Christine Zolli, on November 17, 2006. (Tr. 268.) Dr. Zolli stated that Nazario "has had glaucoma for the past 10 years," and that she had "signs of strong disc cupping, indicating glaucoma." (Tr. 268.) Dr. Zolli further found that Nazario's vision was 20/20 in her right eye and 20/20 -2 in her left eye. (Tr. 268.) Dr. Zolli concluded her report by noting that Nazario was undergoing ongoing therapy and glaucoma monitoring. (Tr. 269.)

**ii. Procedural History**

On January 4, 2006, Plaintiff applied for disability insurance benefits for a period starting on June 16, 2005. (Tr. 82, 85.) Her application was initially denied on April 25, 2006, and again on reconsideration on December 27, 2006 because Plaintiff's condition was deemed "not severe

enough to be considered disabling." (Tr. 42-46, 55-60.) At Plaintiff's request, a hearing was held before Administrative Law Judge John M. Farley on June 7, 2007. (Tr. 27-41.) At the hearing, Plaintiff testified as to her past work history and personal history, along with testifying as to her medical conditions. (Tr. 27-41.) In addition, the Plaintiff's written medical records were entered into evidence and made part of the record. (Tr. 29.)

The ALJ issued his opinion on August 29, 2007. (Tr. 23.) The ALJ found that "objective medical evidence fail[ed] to support the degree of incapacitation alleged by the claimant," and as a result, found that Nazario did not become "disabled" under the meaning of the Act beginning on June 16, 2005. (Tr. 22-23.) On November 1, 2007, Plaintiff filed a request for a review by the Appeals Council; this request was denied on June 22, 2009, rendering this decision the final decision of the Commissioner. (Tr. 1, 7.) Plaintiff now appeals this final decision.

## **APPLICABLE LEGAL STANDARDS**

To establish disability under the Social Security Act, Nazario must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). This physical or mental impairment must be so severe as to render Nazario "not only unable to do [her] previous work, but [unable], considering [her] age, education, and work experience, [to] engage in any other kind of substantial gainful work which exists in the national economy . . ." § 423(d)(2)(A). The Social Security Administration has promulgated a five-step evaluation process to determine whether an individual is entitled to Social Security disability benefits. *See* 20 C.F.R. § 404.1520.

In step one, the ALJ decides whether the claimant is currently engaged in substantial gainful activity. If the claimant is engaged in substantial gainful activity, the claimant is not

eligible for disability benefits and the ALJ's inquiry ends. § 404.1520(a). If the claimant is not engaged in such activity, then in step two the ALJ determines whether the claimant is suffering from a severe impairment. If the impairment is not severe, the claimant cannot qualify for disability benefits and the ALJ's inquiry ends. § 404.1520(c). If the impairment is severe, then in step three the ALJ evaluates whether the evidence establishes that the claimant suffers from a listed impairment. § 404.1520(d). If the claimant suffers from a listed impairment, then the claimant is automatically entitled to disability benefits and the ALJ's inquiry ends. *Id.* If the claimant does not suffer such an impairment, then in step four the ALJ reviews whether the claimant retains the "residual functional capacity" to perform his past relevant work. § 404.1520(e). If the claimant can perform their past relevant work, the claimant is not eligible for disability benefits and the ALJ's inquiry ends. *Id.* If claimant cannot perform such work, then in step five the ALJ considers whether work exists in significant numbers in the national economy that the claimant can perform given his medical impairments, age, education, past work experience, and "residual functional capacity." § 404.1520(f). If such work does exist, the claimant is not eligible for disability benefits. *Id.*

In evaluating the ALJ's decision, we must affirm if the decision is supported by "substantial evidence." 42 U.S.C. § 405(g); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988) (the standard of review is "whether there is substantial evidence in the record" to support the ALJ's decision). Substantial evidence is "more than a mere scintilla" and is generally thought of as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This court is required to give substantial weight and deference to the ALJ's findings. *Scott v. Astrue*, 297 Fed. App'x 126, 128 (3d Cir. 2008).

However, the evaluation of the presence of substantial evidence is not merely a quantitative evaluation, but a qualitative one, "without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). Furthermore, even where substantial evidence is found to exist, this Court may still review the ALJ's decision to determine if it was based upon proper legal standards. *Curtin v. Harris*, 508 F. Supp. 791, 795 (D.N.J. 1981) (holding that an ALJ's undue emphasis on certain record evidence was in error because it was based on an "erroneous legal standard").

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). But, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984).

## DISCUSSION

On appeal, Nazario first argues that substantial evidence in the administrative record exists to support a finding of disability, and requests this Court to reverse the ALJ's decision. (Pl. Br. at 14.) In the alternative, Plaintiff claims that the opinion of the ALJ was "not based on the substantial evidence of record and thus requests this Court to remand that decision and order a new hearing and a new decision." (*Id.*)

As to Plaintiff's first argument, this Court may only review the Administrative Record to determine if substantial evidence supports the ALJ's findings. *See Burns v. Barnhart*, 312 F.3d

7

113, 118 (3d Cir. 2002) (holding that the reviewing court is "not permitted to weigh the evidence or substitute [its] own conclusions for that of the fact-finder"). The fact "[t]hat the record may contain evidence which would have supported a different conclusion does not undermine the Commissioner's findings so long as there exists substantial support for the Commissioner's decision in the record." *Ahearn v. Comm'r of Soc. Sec. Admin.*, 165 Fed. App'x 212, 215 (3d Cir. 2006); *see also Fargnoli v. Halter*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by these findings, even if we would have decided the factual inquiry differently."). Consequently, Plaintiff's first argument fails and we will only address Plaintiff's second argument: whether the ALJ's opinion was based on substantial evidence.

In this case, the ALJ found that Plaintiff met the requirements in the first two steps of the analysis. Namely, in step one, the ALJ determined that Nazario had not engaged in substantial gainful activity since June 16, 2005. (Tr. 15.) In step two, the ALJ determined that Nazario suffered from "the following severe combination of impairments: non-insulin dependent diabetes mellitus; degenerative joint disease of the cervical and lumbar spine; headaches; and status post left ankle fracture." (Tr. 15.) In step three, however, the ALJ determined that Nazario's impairments did not meet the listed impairments. (Tr. 19-21.) And in step four, the ALJ concluded his analysis by determining that Nazario's residual functional capacity allowed her to perform her past relevant work, and thus, she was not eligible for disability benefits. (Tr. 21-23.)

Plaintiff argues that the ALJ erred in his determination that her residual functional capacity enabled her to perform her past relevant work. A determination of whether a claimant's residual function capacity allows her to perform her past relevant work requires the ALJ to perform three sub-steps:

8

> (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000). The ALJ first determined that Nazario had the "residual functional capacity to perform the full range of light work."[1] (Tr. 21.) Second, the ALJ determined that Plaintiff's past relevant work involved her sitting all day and did not involve lifting more than twenty pounds. (Tr. 23.) Consequently, the ALJ concluded that Nazario's residual functional capacity was in fact compatible with the demands of her past relevant work experience and therefore, she could not be considered disabled. (Tr. 23.)

**i. The ALJ's Residual Functional Capacity Determination requires further elaboration**

"'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999) (citing 20 C.F.R. § 404.1545(a)). "In making a residual functional capacity determination, the ALJ must consider all evidence before him. Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett*, 220 F.3d at 121 (internal citations omitted). A "comprehensive and analytical" explanation by the ALJ is necessary, "so that a reviewing court may know the basis for the decision." *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974). As such, if the explanation of the ALJ's decision is inadequate, the case should be vacated and

---

[1] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

9

remanded to the ALJ in order to fully develop and explain the factual findings. *See Burnett*, 220 F.3d at 121 (ordering remand where ALJ did not explain why he rejected certain evidence that supported plaintiff's claim); *Cotter v. Harris*, 642 F.2d 700, 707 (3d Cir. 1981) (ordering remand where ALJ failed "to explain his implicit rejection" of probative medical evidence); *see also Lombardi v. Astrue*, No. 08-04061, 2009 WL 3229763, at *12-13 (D.N.J. Sep. 29, 2009) (ordering remand because of unexplained inconsistencies in the ALJ's decision).

Here, the ALJ determined that Plaintiff had the "residual functional capacity to perform the full range of light work." (Tr. 21.) The ALJ based this finding on his view that "[t]he objective medical evidence in the instant case fails to support the degree of incapacitation alleged by the claimant." (Tr. 22.) The ALJ's opinion supports this finding by citing to the records and opinions of Plaintiff's treating physicians and those physicians who had reviewed her records. (Tr. 22.) However, the decision fails to consider evidence contrary to the ALJ's finding and goes so far as to state, erroneously, that such evidence does not exist in the record. Specifically, the ALJ found that "Dr. [M.] Patel's physical examination did not elicit any significant findings, and he assessed only a restriction referable to lifting/carrying heavy objects." (Tr. 22.) This finding is contrary to the record, and is contrary to the ALJ's own recitation of the facts. (*See* Tr. 16.) In fact, Dr. M. Patel diagnosed Plaintiff as suffering from "degenerative spinal joint disease" and opined that she should avoid carrying weight, should not stand for more than two hours per day, was limited in pushing and/or pulling, and should not do any work "involving bending of the back or lifting heavy objects." (Tr. 205.) The ALJ's opinion does not make clear whether this conflicting evidence was rejected or merely ignored, and if rejected, does not adequately explain the basis for said rejection.

In addition, the ALJ seems to have implicitly rejected the findings of the ophthalmologist Dr. Zolli.  As stated *supra*, the records of Dr. Zolli indicate that Plaintiff had suffered from glaucoma for ten years and Dr. Zolli's examination showed physical indications of glaucoma.  (Tr. 268.)  While the ALJ's opinion does recite these findings, it does not seem to consider them in the determination of Nazario's residual functional capacity. (*See* Tr. 22.)  Again, without an adequate explanation, this Court is unable to determine the grounds upon which the ALJ rejected this evidence.  *See*, *e.g.*, *Cotter*, 642 F.2d at 707.

Because the ALJ's opinion contains apparent errors and omissions of probative evidence, this Court is unable to determine whether the ALJ's finding is, indeed, supported by substantial evidence.  Accordingly, this Court is unable to affirm the ALJ's decision and this matter shall be remanded to the ALJ to further develop the factual record and to make a sufficiently detailed determination of Nazario's residual functional capacity.

### ii. Vocational Evidence is required to determine Plaintiff's work capabilities

"[L]imitations may be exertional, nonexertional, or a combination of both.  Limitations are classified as exertional if they affect your ability to meet the strength demands of jobs . . . .  Limitations or restrictions which affect your ability to meet the demands of jobs other than the strength demands, that is, demands other than sitting, standing, walking, lifting, carrying, pushing or pulling, are considered nonexertional." 20 C.F.R. § 404.1569.   The law is "clear that when a claimant has even one non-exertional limitation, a vocational expert must be consulted or the claimant must be given the opportunity to provide his own witness." *Billingsley v. Comm'r of Soc. Sec. Admin.*, No. 08-1912, 2009 WL 3128436, at *4-5 (D.N.J. Sep. 25, 2009) (citing *Poulos v. Comm'r of Soc. Sec. Admin.*, 474 F.3d 88, 93-94 (3d Cir. 2007)).  In *Poulos*, the plaintiff suffered from both exertional and non-exertional impairments, and the court held it was

error for the ALJ to make a determination as to the plaintiff's work capabilities without looking to vocational evidence. 474 F.3d at 93-94; s*ee also Sykes v. Apfel*, 228 F.3d 259, 261 (3d. Cir. 2000) (holding that it is error for ALJ to rely exclusively on the Grids when determining the impact of non-exertional impairments); *Witkowski v. Astrue*, No. 09-1672, 2010 WL 2287560, at *11 (D.N.J. June 3, 2010) (ordering remand and stating that "this Circuit has held that the appropriate way to determine work capabilities in light of both exertional and nonexertional limitations is to refer to a vocational expert"); *McGill v. Comm'r of Soc. Sec. Admin.*, No. 09-3217, 2010 WL 132635, at *2 (D.N.J. Jan. 13, 2010) (ordering remand to obtain additional vocational evidence to determine impact of non-exertional impairments); *Billingsley v. Comm'r of Soc. Sec. Admin.*, 2009 WL 3128436, at *4-5 (ordering use of vocational expert on remand "because the ALJ is not in the position to make such a determination about the import of a non-exertional limitation").

Here, the ALJ found that Nazario suffered from "the following combination of severe impairments: non-insulin dependent diabetes mellitus; degenerative joint disease of the cervical and lumbar spine; headaches; and status post left ankle fracture." (Tr. 15.) To the extent that these conditions interfere with her ability to perform her work, they may constitute non-exertional impairments. Consequently, the ALJ should have supported his opinion with a vocational expert and, if necessary, other vocational evidence.

## CONCLUSION

For the reasons stated above, the ALJ's decision is VACATED and REMANDED for further proceedings consistent with this opinion.

**SO ORDERED.**

s/ Susan D. Wigenton<br>**Susan D. Wigenton, U.S.D.J.**